UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ADAM E. FLANDERS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) 2:12-cv-00277-JAW |
| | ) 2:12-cv-00278-JAW |
| STATE OF MAINE, | ) |
| | ) |
| Respondent | ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITIONS**

Petitioner Adam Flanders pleaded guilty in January 2008 to several crimes in Knox
County Superior Court, including aggravated assault, tampering with a victim, and violations of
conditions of release.  In August 2008, he pleaded guilty in Maine District Court in Belfast to
sexual abuse of a minor and violation of conditions of release and admitted a probation violation
in Knox County Superior Court based on the same conduct.  On September 14, 2012, Flanders
filed two petitions, pursuant to 28 U.S.C. § 2254, alleging that he received ineffective assistance
of counsel and that his pleas were not knowing and voluntary.  (ECF No. 1 in both cases.)  The
respondent does not raise any issues regarding timeliness, failure to exhaust state remedies, or
petitioner's custodial status.  I recommend that the court deny the petitions.

**FACTUAL BACKGROUND**

Flanders does not contest any specific fact set forth in the state court post-conviction
decision although of course he wishes that the court had given credence to his version of the
events.  For the most part, I rely on the facts as set forth in the post-conviction decision although
I have also reviewed the transcript of the post-conviction evidentiary hearing and determined that
there is support in the record for the post-conviction court's findings.  Flanders retained counsel

to represent him on his federal habeas petitions.  The docket entries reflect that the same retained counsel also entered an appearance in state court prior to the state evidentiary hearing on the state post-conviction petitions.

### 1.  The Assault Incident (Knox County)

The underlying Knox County crimes arose out of an assault that involved Flanders and two victims, one of whom was a boy age 16 at the time of the crimes.  (State Court Record §§ A.1 at 1; D.3, Vol. II at 64.)  The other victim in that incident was the boy's father.  The assault took place in February 2007 at the home of the boy, his father, and his stepmother; the stepmother was at home but was not assaulted.  (State Court Record §§ A.1 at 1; D.4 at 6.)  Flanders testified that he had been in a relationship with the boy since 2005 when Flanders was eighteen or nineteen years old and the boy was fifteen.  (State Court Record § D.3, Vol. II at 64-66.)  Prior to the events at issue in this post-conviction, Flanders had pleaded guilty to assaulting the boy in 2006; sentencing apparently was deferred but Flanders was under a court order of no contact with the boy.  (State Court Record § D.3, Vol. II at 64-66.)  In addition, the boy's stepmother had obtained an order of protection from harassment prohibiting Flanders from having contact with the boy.  (State Court Record §§ D.3, Vol. II at 66; D.4 at 6.)  The conviction for tampering with a victim concerned the same boy as was involved in the February 2007 assault.  (State Court Record § D.4 at 11-12.)

Flanders's main theory on post-conviction is that his counsel did not investigate the facts of this incident sufficiently because he failed to review videotaped interviews by the investigator of Flanders and the two victims.  (Petitioner's Memorandum at 4; State Court Record § D.3, Vol. II at 41-42, 67, 91-92.)  Flanders alleges that these three videotapes contain fleshed-out evidence that he was acting in self-defense, and although there was a reference to self-defense in a written

summary that the investigator wrote, the written report lacked detail.  Flanders argues that had he known about the videotapes and had counsel known and advised him properly on a self-defense claim, Flanders would not have pleaded guilty.  (Petitioner's Memorandum at 4.)

Flanders's self-defense theory is that the boy and his father lured Flanders to their house as a setup to get Flanders arrested, and Flanders responded in self-defense to the father's aggressive behavior.  (State Court Record § D.4 at 5, 7.)  I summarize below the post-conviction court's description of each of the recorded interviews, which are not themselves in the record before this Court.  The post-conviction court did not find meaningful factual support in any of the recorded statements for a claim of self-defense by Flanders.  (State Court Record § D.4 at 6.) Furthermore, the court noted that the investigator's written summary, which was provided to counsel, itself made it clear that Flanders claimed self-defense.  (State Court Record § D.4 at 9.) Flanders testified that he discussed a theory of self-defense with counsel but that he decided to plead guilty because he was concerned about a prison sentence on the charge of tampering and because he thought he might be prosecuted—unfairly because he felt he was innocent—for having child pornography on his computer.  (State Court Record § D.3, Vol. II at 29, 39.)

In the recorded interview of Flanders concerning the assault incident, Flanders told the investigator that the boy asked him to sneak into the boy's residence so the two could have sex. (State Court Record § D.4 at 6.)  Flanders told the investigator that he parked his car where it could not be seen, and he took a knife to use in self-defense.  (State Court Record § D.4 at 6.) The boy let Flanders into the house, and he went to the boy's room.  The boy then thought that his stepmother may have seen Flanders, and he told Flanders to go out through a window and hide on a roof.  (State Court Record § D.4 at 6.)  The boy went downstairs, returned, and told Flanders to come back into his room.  (State Court Record § D.4 at 6.)  Flanders did so and

3

started taking off his clothes.  (State Court Record § D.4 at 6.)  The father then called the boy downstairs.  (State Court Record § D.4 at 6.)  Flanders hid in a closet in the boy's room.  (State Court Record § D.4 at 6.)  The father entered the boy's room and was not carrying a weapon. (State Court Record § D.4 at 6.)  Flanders swung his knife toward the father and cut him.  (State Court Record §§ D.3, Vol. II at 68; D.4 at 6.)  Flanders told the investigator that he did this because he was afraid of the father and was acting in self-defense.  (State Court Record § D.4 at 6.)  The boy was also cut during the incident, and although Flanders told the investigator that he did not cause that injury, at the hearing on the post-conviction, Flanders admitted that he did cut the boy with the knife.  (State Court Record §§ D.3, Vol. II at 67; D.4 at 6.)  Flanders testified that he injured the father "much more seriously" than the boy, although the boy sustained several cuts.  (State Court Record § D.3, Vol. II at 67-68.)

At the outset of the investigator's videotaped interview of the boy, the boy told the investigator he had a plan to set Flanders up for arrest.  (State Court Record § D.4 at 7.) However, by the end of the interview, the boy acknowledged that he did not in fact have any setup plan, but rather Flanders had the idea to go to the house and the boy acceded to the idea. (State Court Record § D.4 at 7.)  The post-conviction court found that the evidence did not support a theory that Flanders was justified in using self-defense on grounds that the father participated in a setup plan to get Flanders to the home.  (State Court Record § D.4 at 7-8.) Furthermore, the court noted that counsel actually had information about a possible setup plan because counsel had the investigator's written report, which described the boy's statement about a setup.  (State Court Record § D.4 at 7.)

In the father's videotaped interview with the investigator, the father told the investigator that he was asleep and did not know that Flanders was in the house until his wife told him.

4

(State Court Record § D.4 at 8.)  He stated that his intent was to take the knife from Flanders and wait until the police arrived.  (State Court Record § D.4 at 8.)  He slowly approached Flanders in order to get the knife, which Flanders was holding against the boy.  (State Court Record § D.4 at 8.)  The father was able to restrain Flanders by holding him down by the throat while holding onto Flanders's hands as Flanders was still holding the knife.  (State Court Record § D.4 at 8.)  The father also reported that as he was restraining Flanders, Flanders was trying to attack him.  (State Court Record § D.4 at 8.)

Flanders asserts that some of the details of the father's recorded interview were left out of the written report.  The omitted portion included words exchanged between Flanders and the father during the fight.  (State Court Record § D.4 at 8.)  The father told the investigator that Flanders said that the father was killing him and would be charged with murder.  (State Court Record § D.4 at 8.)  The father told the investigator that "he told Flanders that it would be the best time he would have spent in jail and that Flanders would be off the streets or dead because he had caused 'misery'" to the father's family.  (State Court Record § D.4 at 8.)  The omitted information also included evidence that undercuts Flanders's self-defense theory: (1) the boy stated that when the violence began, Flanders took him from behind and held the knife near the boy's throat; (2) the father was watching the situation and threatened to intervene if Flanders escalated the threat to the boy; and (3) the boy said that Flanders stabbed him at least once before the father approached Flanders.  (State Court Record § D.4 at 8 n.3.)

Counsel received discovery materials from an attorney who represented Flanders at his first appearance.  (State Court Record § D.4 at 5.)  Counsel did not have a significant criminal practice in Knox County, and he relied on comments from several attorneys who did that the District Attorney's office there had a practice of providing full discovery.  (State Court Record §

5

D.4 at 5.)  On that basis, counsel did not make an independent request for discovery.  (State Court Record § D.4 at 5.)  He received the investigator's written report, which summarized the interviews and made note of the recordings, but he did not receive copies of the recordings themselves.  (State Court Record § D.4 at 5.)  Counsel testified that he was not aware of the recordings while he was representing Flanders.  (State Court Record § D.3, Vol. I at 23-24.)  Flanders also argued before the post-conviction court that counsel failed in other ways to investigate diligently, but the court noted that Flanders did not state what evidence counsel failed to uncover or what sources counsel might have pursued in addition to trying unsuccessfully to discuss the matter with the boy, his father, and his stepmother.  (State Court Record §§ D.3, Vol. I at 24; D.4 at 10-11.)

### 2.  Tampering with a Victim (Knox County)

The following are the facts that led to the conviction of tampering with the victim.  In March 2007, Flanders sent a letter to the boy after Flanders had been charged with crimes based on the assault incident at the boy's home.  (State Court Record §§ B.1 at 1; D.4 at 11.)  Flanders wrote the letter while he was being held on pretrial bail set in the assault case.  (State Court Record § D.4 at 11.)  In the letter, Flanders asked the boy to exculpate him from criminal liability by falsely stating that the boy's injuries were self-inflicted rather than caused by Flanders. (State Court Record § D.4 at 11.)  Flanders asked the boy to use a "last opportunity," stating that it "essentially involves you changing your statement."  (State Court Record § D.4 at 11.)  Counsel testified at the post-conviction hearing that the letter supported the allegation that Flanders intended to induce the boy to testify falsely.  (State Court Record § D.4 at 11.)  The post-conviction court concluded that counsel's assessment of the letter was not flawed and did not deprive Flanders of effective assistance of counsel.  (State Court Record § D.4 at 12.)

### 3.  Terms of Probation (Knox County)

Flanders argues that counsel did not explain that the terms of probation in the two Knox County cases were to run consecutively.  (State Court Record § D.4 at 12.)  At the January 2008 hearing at which Flanders pleaded guilty and was sentenced, the prosecutor explained the terms of the parties' joint recommendation, under which the sentences on the charges in the assault case were to run concurrently with one another but the sentence on the tampering conviction was to run consecutively.  (State Court Record § D.4 at 13.)  Flanders's counsel agreed with the prosecutor's description and confirmed the joint recommendation.  (State Court Record § D.4 at 13.)  The court then asked Flanders directly if he agreed to the sentences, to which he replied with the question, "Does that mean six years of probation?"  The court said, "That's right, exactly," and Flanders responded, "Okay."  (State Court Record § D.4 at 13.) [1]

At the beginning of the plea hearing, the court advised Flanders of his right to remain silent and his right to stop the hearing anytime without consequence to him.  (State Court Record § D.4 at 14.)  The court explained the sentences, and Flanders stated that he understood them. (State Court Record § D.4 at 14-15 & n.6.)  After the court's discussion with Flanders about sentencing, Flanders confirmed that he understood the court's questions and had answered them truthfully.  (State Court Record § D.4 at 14.)  He also stated, in response to the court's inquiry,

---

[1]      The post-conviction court amended the sentence in CR-07-90, which is the tampering case, to reduce the term of probation to two years on counts two and three.   (State Court Record § B.1 at 10.)  This amendment appears as an entry dated August 18, 2011, in the docket sheet for the post-conviction.  (State Court Record § E.1 at 4.)  The reason for the amendment was that counts two and three were for violation of condition of release, charged pursuant to 15 M.R.S. § 1092(1)(B) as Class C crimes, and therefore subject to a maximum period of probation of two years, pursuant to 17-A M.R.S. § 1202(1).  (State Court Record § D.4 at 2 & n.1.)  It is not apparent from the docket sheet alone that the original term of probation on either count two or count three was incorrectly stated as three years; rather, the docket sheet indicates that the sentence on count two did not include any term of probation, and count three included a two-year term of probation.  (State Court Record § B.1 at 5-6.)  However, at sentencing, the parties and the court all clearly contemplated that the term of probation would be three years.  (State Court Record § D.4 at 13.)

that he was satisfied with counsel's representation of him and that counsel had answered his questions, given him advice, and done the job thoroughly. (State Court Record § D.4 at 14.) He exercised his right of allocution, made a statement, and declined further comment. (State Court Record § D.4 at 14.)

### 4. Sexual Abuse of a Minor (Waldo County)

The Waldo County charge of sexual abuse of a minor arose out of an incident in June 2008 with a different victim than the boy involved in the assault incident. (State Court Record §§ C.1 at 1; D.3, Vol. I at 115.) That charge also led to a motion for revocation of probation in the Knox County sentences. (State Court Record § A.1 at 11.) Flanders told counsel that he had sexual intercourse with the victim, who was age fifteen at the time. (State Court Record §§ D.3, Vol. I at 105-06; D.4 at 17.) Flanders believed that because the minor penetrated him, rather than the reverse, he did not engage in a "sexual act" as defined under 17-A M.R.S. § 251(C). (State Court Record § D.4 at 17.) The State had evidence that Flanders knew that the victim was younger than sixteen years old, and that thus the defense provided in 17-A M.R.S. § 254(2), i.e., that the actor reasonably believed that the victim was at least sixteen years old, was not available to Flanders. (State Court Record § D.4 at 17 & n.7.)

Flanders asserts that counsel was influenced by the prospect of evidence of child pornography on his computer, although Flanders knew that he did not have any child pornography on his computer. (State Court Record § D.4 at 15-16.) The post-conviction court concluded that either way, Flanders was not prejudiced; if Flanders was correct that there was no child pornography on his computer, then Flanders would not have been influenced by counsel's concern, whereas if counsel's concerns were legitimate, the advice was reasonable. (State Court Record § D.4 at 15.) The court also noted that counsel's primary concern was keeping Flanders

out of the custody of the Department of Corrections due to safety concerns, and that counsel was successful in avoiding a sentence for the conviction of sex abuse of a minor that was longer than the unsuspended portion of the sentence for the assault conviction.  (State Court Record § D.4 at 18.)

### PROCEDURAL HISTORY

Flanders was indicted in February 2007 in Knox County Superior Court for two counts of aggravated assault (Class B), 17-A M.R.S. § 208(1)(B); two counts of criminal threatening (Class C), 17-A M.R.S. § 209(1); one count of violation of a protective order from harassment (Class D), 5 M.R.S. § 4659(1); and two counts of violating conditions of release (Class E), 15 M.R.S. §1092(1)(A).  (State Court Record § A.1 at 1-2, State of Maine v. Adam E. Flanders, State Court Docket No. ROCSC-CR-2007-00080.)   According to the post-conviction decision, one of the counts for violation of condition of release arose out of a January 2007 incident that preceded the February 2007 incident that led to the other six counts in that indictment.  (State Court Record § D.4 at 1.)  Counsel was appointed, but subsequently Flanders retained his own counsel.  (State Court Record § A.1 at 2.)

Flanders was indicted in May 2007 in Knox County Superior Court for one count of tampering with a victim (Class B), 17-A M.R.S. 454(1-B)(A)(1); and two counts of violating condition of release (Class C), 15 M.R.S. § 1092(1)(B).  (State Court Record § B.1 at 1-2, State of Maine v. Adam E. Flanders, State Court Docket No. ROCSC-CR-2007-00090.)  Flanders retained the same counsel who was representing him on the aggravated assault and related charges.  (State Court Record §§ A.1 at 2; B.1 at 2.)  Flanders pleaded not guilty to all of the charges in both cases at his arraignment.  (State Court Record §§ A.1 at 4; B.1 at 2-3.)  Flanders

changed his plea to guilty as to all of the charges following a hearing pursuant to M. R. Crim. P. 11.  (State Court Record §§ A.1 at 5-10; B.1 at 4-6.)

In January 2008, the court accepted the parties' joint sentencing recommendations, and in doing so imposed sentences that were concurrent within each of the indictments, but consecutive between the indictments.  (State Court Record §§ A.1 at 5-10; B.1 at 4-7; D.4 at 2.)  The following are the sentences on each of the convictions that resulted from the first indictment, i.e. CR-07-80:  (1) for aggravated assault (counts one and two), a five-year term of imprisonment with all but nine months suspended, with the initial period to be served in the county jail, followed by three years of probation on count one; (2) for criminal threatening (counts three and four), a nine-month term of imprisonment in the county jail; (3) for violating an order of protection from harassment (count five), a ninety-day term of imprisonment in the county jail; (4) for violating conditions of release (counts six and seven), a ninety-day term of imprisonment in the county jail.  (State Court Record § A.1 at 6-10.)

The following are the sentences on each of the convictions that resulted from the second indictment, i.e., CR-07-90:  (1) for tampering with a victim (count one), a two-year-and-six-month term of imprisonment with all suspended, with the Department of Corrections, followed by three years of probation, with count one to be served consecutively to count one of the sentence for aggravated assault; (2) for violating conditions of release (counts two and three) a two-year-and-six-month term of imprisonment with all suspended, with the Department of Corrections, followed by two years of probation,[2] to be served consecutively to the sentence in CR-07-80 for aggravated assault.  (State Court Record § B.1 at 4-6, 10-12.)

---

[2]     See supra note 1 concerning the length of probation in CR-07-90, as discussed and decided upon by the post-conviction court.

In May 2008, the State filed a motion to revoke probation in the Knox County cases, on the basis of new criminal conduct of sexual abuse of a minor.  (State Court Record §§ A.1 at 11; B.1 at 7.)  Flanders denied the allegations at his initial appearance on the motion.  (State Court Record § A.1 at 11.)  However, at the hearing in August 2008, he admitted the allegations, and the court found a probation violation and ordered a partial revocation of six months of the suspended portion of the sentence in Knox County, to be served consecutively to the sentence in the Maine District Court in Belfast on the underlying crime.  (State Court Record §§ A.1 at 11-12; C.1 at 1.)

The State filed a criminal complaint in the Maine District Court in Belfast for sexual abuse of a minor, (Class D), 17-A M.R.S. § 254(1)(A), based on the same conduct that was the subject of the motion for probation revocation.  (State Court Record § C.1 at 1, State of Maine v. Adam E. Flanders, State Court Docket No. BELDC-CR-2008-00723.)  Flanders pleaded guilty at his arraignment in August 2008, and the court sentenced him to a term of imprisonment of three months at the Waldo County Jail.  (State Court Record § C.1 at 1.)  In addition, he was ordered to comply with the sex offender registry requirements and was classified as a ten-year registrant. (State Court Record § C.1 at 2.)

In October 2008, Flanders filed a petition for post-conviction review of his Knox County convictions.  (State Court Record § D.1 at 1, Adam E. Flanders v. State of Maine, State Court Docket No. ROCSC-CR-2008-00338.)  In June 2009, Flanders filed a petition for post-conviction review of his Waldo County conviction.  (State Court Record § E. 1 at 1, Adam E. Flanders v. State of Maine, State Court Docket No. BELSC-CR-2009-00212.)  The two post-conviction cases were consolidated for pretrial and trial.  (State Court Record § E.1 at 2-3.)

Amended petitions were allowed and filed in both post-convictions.  (State Court Record §§ D.1 at 2; D.2; E.1 at 3; E.2.)

The petitions allege both that counsel on the underlying criminal prosecutions provided ineffective assistance and that the pleas were not knowing or voluntary.  As to the ineffective assistance claim, Flanders's collective allegations in both the Knox and Waldo County cases are that (1) counsel failed to listen to recorded statements that he and the two victims gave to investigators—recordings that he argues would have supported a self-defense claim; (2) counsel failed to investigate adequately; (3) counsel incorrectly advised Flanders that the State's evidence on the tampering charge was strong; (4) counsel was concerned that investigators would find child pornography on Flanders's computer when in fact Flanders had no child pornography on his computer; and (5) counsel led Flanders to believe, incorrectly, that the combined effects of the sentences in the two Knox County cases would result in a total of only three years of probation.  (State Court Record § D.4 at 4-16.)  As to the claim that the pleas were not knowing or voluntary, Flanders alleges that he was not aware of the contents of the victims' recorded statements, he was influenced by counsel's concern that child pornography would be found on his computer, and he felt pressured to plead to the charge of sexual abuse of a minor due to unfair treatment because he is gay.  (State Court Record § D.4 at 4.)

A one-day evidentiary hearing was held in March 2011.  (State Court Record §§ D.1 at 4; E.1 at 3.)  Flanders was represented by his post-conviction counsel at the hearing.  The witnesses were the attorney about whom Flanders made his claims of ineffective assistance of counsel, Flanders, a family friend of Flanders, and a private investigator.  (State Court Record § D.3, Vol. I at 2, Vol. II at 2, 108, 129.)

12

In August 2011, the court denied both of the post-conviction petitions, except to order that, in CR-07-90, the sentence be reduced to two years of probation on both count 2 and count 3. (State Court Record §§ D.1 at 5; D.4 at 20; E.1 at 4.) As to counsel's failure to listen to the recorded statements of Flanders and the two victims, the court appears to have bypassed whether counsel provided ineffective assistance and decided against Flanders based on his failure to demonstrate prejudice. (State Court Record § D.4 at 10.) As to all of the other claims, the court found that Flanders had not met his burden of proving that counsel was ineffective, and as to some of the claims, the court also noted a lack of prejudice. In addition, the court also found that Flanders had not met his burden of proving that his guilty pleas were not knowing and voluntary.

In June 2012, the Law Court denied Flanders's request for a certificate of probable cause, pursuant to 15 M.R.S. § 2131(1) and M.R. App. P. 19. (State Court Record §§ F.1 at 1; F.3, Adam E. Flanders v. State of Maine, Law Court Docket No. Kno-11-448.)

In September 2012, pursuant to 28 U.S.C. § 2254, Flanders filed in this Court the two petitions for habeas corpus relief that are now pending before me. The petition in Docket No. 2:12-cv-00277-JAW challenges the Knox County convictions, and the petition in Docket No. 2:12-cv-00278-JAW challenges the Waldo County conviction and the Knox County probation violation admission. Although Flanders filed the section 2254 petitions as separate actions, he filed the same memorandum in support of both cases because the two post-conviction actions were consolidated in the state court. (ECF No. 5 in both cases.)

It is undisputed that Flanders was still serving his probation sentence at the time he filed the federal habeas petitions in September 2012. Flanders represents as much. (Petitioner's Memorandum at 2.) I accept the State's decision not to address Flanders's custody

representation and argument as an implicit representation by the State that Flanders was still in custody when he filed the petitions.

Both cases have been briefed by the parties and the matter is now properly before this Court for decision.  Because the Maine Supreme Judicial Court denied a certificate of probable cause for an appeal of the post-conviction court's judgment, the final reasoned analysis of the state court is the August 18, 2011, decision of the Superior Court.  (State Court Record § D.4.)

## LEGAL STANDARDS

Flanders claims that he received ineffective assistance of counsel.  To succeed on this claim, a petitioner "must show both deficient performance by counsel and resulting prejudice."  Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).  The deficient-performance aspect of the burden requires that the petitioner demonstrate that counsel's conduct in the case "'fell below an objective standard of reasonableness.'"  Id. (quoting Strickland, 466 U.S. at 688).  For Flanders to satisfy the Strickland "prejudice" element, he must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. (quoting Porter v. McCollum, 130 S. Ct. 447, 453 (2009) (per curiam)).  "In the guilty plea context, this means [the petitioner] has to demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"  Moreno-Espada v. U.S., 666 F.3d 60, 64 (1st Cir. 2012) (quoting United States v. Colón-Torres, 382 F.3d 76, 86 (1st Cir. 2004) (quoting Hill v. Lockhart, 474 U.S. 52, 60 (1985))).   "A defendant's failure to satisfy one prong of the Strickland analysis obviates the need for a court to consider the remaining prong."  Tevlin, 621 F.3d at 66 (citing Strickland, 466 U.S. at 697.)

Flanders also claims that the pleas were not knowing and voluntary.  "[A] defendant, by entering a guilty plea, waives many constitutional rights including the privilege against self-

14

incrimination, the right to a trial by jury, and the right to confront accusers." Steele v. Murphy, 365 F.3d 14, 16 (1st Cir. 2004) (citing Boykin v. Alabama, 395 U.S. 238, 243 (1969)). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970)). "[A] prisoner can collaterally attack his sentence on the ground that his guilty plea was not knowing or voluntary if his claim is based on evidence not available to him at the time of the plea." Ferrara v. United States, 456 F.3d 278, 289 (1st Cir. 2006).

In addition to these burdens, because Flanders's claims were adjudicated on the merits by the state court, he must meet the requirements of the federal habeas statute, 28 U.S.C. § 2254. Section 2254 requires a petitioner to demonstrate that the state court's adjudication of the claim

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Without a constitutional violation, of course, [a petitioner] cannot meet the [statutory] standard." Tevlin, 621 F.3d at 65. The First Circuit recently summarized the statutory standard as follows:

> When applying § 2254(d)(1) or (2), a decision can still be "reasonable" even if the reviewing court "concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." Renico v. Lett, 130 S.Ct. 1855, 1862 (2010) (internal quotation marks omitted and emphasis added). "[U]nreasonable" under this section of the AEDPA means something greater than incorrect or erroneous. See id. Finally, even if a state court's error rises to the level of being "unreasonable," habeas relief remains unavailable unless the petitioner can also show that the error "had a 'substantial and injurious effect or influence in determining the jury's verdict.'" Delaney v. Bartee, 522 F.3d 100, 105 (1st Cir. 2008) (quoting Brecht v. Abrahamson, 507 U.S. 619, 631 (1993)).

Shuman v. Spencer, 636 F.3d 24, 30 (1st Cir. 2011) (citation omitted).  The state court's factual findings are "presumed to be correct," unless the petitioner can rebut the presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Tevlin, 621 F.3d at 62.  Allegations of ineffective assistance of counsel present "a mixed question of law and fact and should therefore be reviewed under the 'unreasonable application' clause of § 2254(d)(1)."  Shuman, 636 F.3d at 31.

DISCUSSION

## 1. Custody

The State does not contest that Flanders meets the requirement that he be in custody and does not make any argument concerning custody.  I address the issue briefly, simply to establish that the Court has jurisdiction.  Under the federal habeas statute, the court has jurisdiction to consider a petition challenging a state court judgment from persons who are "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); see also 28 U.S.C. § 2254(a); Maleng v. Cook, 490 U.S. 488, 490-91 (1989).  "We have interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed.  Maleng, 490 U.S. at 490-91.  A person who is not incarcerated but is serving supervised probation is in custody for purposes of federal habeas statute.  Jackson v. Coalter, 337 F.3d 74, 78-79 (1st Cir. 2003).  A person who has been convicted and given consecutive sentences "remains 'in custody' under all of his sentences until all are served," for purposes of meeting the custody requirement of the federal habeas statute and challenging a sentence that has been completed.  See Garlotte v. Fordice, 515 U.S. 39, 41 (1995).  As discussed under the procedural history above, I accept the parties' representations that Flanders was serving probation when he filed his federal habeas petitions.

**2.   Claims Arising from the Assault Incident**

The post-conviction court decided the claim of ineffective assistance of counsel against Flanders on the basis of lack of prejudice rather than a failure to demonstrate ineffective assistance of counsel.  (State Court Record § D.4 at 10.)   Flanders asserts that counsel conceded at the post-conviction hearing that he would not have recommended a guilty plea if he had known of the self-defense evidence in the recorded statements.  (Petitioner's Memorandum at 4.)  This is not an accurate characterization of counsel's testimony in the post-conviction hearing; counsel was simply responding to questions that were limited in scope.  (State Court Record § D.3, Vol. I at 44-48.)

Regardless of whether counsel's testimony could be characterized as a concession on the issue of ineffective assistance, the post-conviction court's decision denying relief due to Flanders's failure to demonstrate prejudice was not contrary to or an unreasonable application of clearly established federal law.  See 28  U.S.C. § 2254(d)(1).  There is simply no weight to Flanders's argument concerning the prejudice prong of the inquiry, i.e., that if counsel had reviewed the recorded interviews he would have advised Flanders to go to trial on a self-defense theory and this would have led to a reasonable probability of a different and more favorable outcome for Flanders.  The court noted that some of the facts were actually presented less favorably toward Flanders in the recorded statements as compared with the written summary, and the additional information contained in the recorded statements was inconsistent with a self-defense theory.  (State Court Record § D.4 at 8 n.3.)  Flanders has not demonstrated "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  See Moreno-Espada, 666 F.3d at 64; Tevlin, 621 F.3d at 66 (quoting Porter, 130 S.Ct. at 453).

17

Flanders also challenged his convictions on the basis that his pleas were not knowing and voluntary.  See Brady, 397 U.S. at 748; Ferrara, 456 F.3d at 289.  Flanders alleged in the state post-conviction proceeding that he did not listen to the recorded statements and therefore did not know certain facts that might have supported a self-defense claim.  (State Court Record § D.4 at 16.)  The post-conviction court concluded that for the same reasons that Flanders did not demonstrate ineffective assistance of counsel, he also failed to demonstrate that his pleas were not knowing and voluntary.  (State Court Record § D.4 at 16.)  Flanders essentially asserted in the post-conviction proceeding that his plea was based on "a faulty premise," see Brady, 397 U.S. at 757, which was that he had no legitimate claim of self-defense.  But the post-conviction court did not agree with that assertion; on the contrary, it found that the recorded statements did not support a self-defense claim. The state court's post-conviction decision did not "[result] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

### 3.  Claims Arising from the Charge of Tampering with a Victim

Flanders's petition before this Court does not specifically address the post-conviction court's finding that counsel's investigation and evaluation of the facts on the charge of tampering with a victim was reasonable.  The letter that Flanders sent to the boy is not part of the record in this Court, but the post-conviction court described it in detail and quoted the salient part in which Flanders asked the boy to change his statement.  The letter as described by the court supports the charge, and it was not at all unreasonable for counsel to conclude that the evidence against Flanders was strong.  The state court's analysis on post-conviction did not "[result] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," see 28 U.S.C. § 2254(d)(2), nor did it "[result] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" when the

court concluded that counsel did not provide ineffective assistance, see Shuman, 636 F.3d at 30-31, and the plea was knowing and voluntary, see Brady, 397 U.S. at 748; Ferrara, 456 F.3d at 289.

### 4. Claims Arising from the Terms of Probation in the Knox County Sentences

Flanders's allegation that he did not know what sentence would be imposed when he entered his pleas is simply wrong. Flanders himself asked if it was to be six years, and when the court confirmed that length, Flanders agreed. After the court explained that there would be two consecutive terms of probation, Flanders said he understood this. There is no factual basis for Flanders's claim of either ineffective assistance, see Shuman, 636 F.3d at 30-31, or that the plea was not knowing and voluntary, see Ferrara, 456 F.3d at 289. That two out of the three counts of the second of the two consecutive sentences were later amended to two years of probation rather than three years has no bearing on this analysis.

### 5. Claims Arising from the Charge of Sexual Abuse of a Minor

Flanders raises two points in challenging his conviction for sexual abuse of a minor. First, he complains that "irrelevant pornographic evidence was presented to [him] just before the plea as if related to his case and where discussions concerning possible child pornography charges were discussed . . . ." (Petitioner's Memorandum at 5.) He argues that he was induced to plead guilty to the charges brought against him in order to reduce the possibility of prosecution for possession of child pornography on his computer. (State Court Record § D.4 at 15.) The post-conviction court noted that Flanders had argued that this allegation bore upon the Knox County indictments, but in his petition before this Court he alleges that the acts of anti-gay bias and pressure occurred in the context of the charge of sexual abuse of a minor. (State Court Record § D.4 at 15; Petitioner's Memorandum at 5.) The post-conviction court noted that Flanders's central argument was that counsel was influenced by the concern about child pornography charges, but counsel need not have been so influenced because there were no illegal

images on Flanders's computer.  The court rightly concluded that regardless of whether there were illegal images on Flanders's computer, Flanders was not deprived of effective assistance of counsel.  (State Court Record § D.4 at 15.)

A similar analysis supports the court's conclusion that Flanders's pleas were knowing and voluntary, notwithstanding counsel's concern, expressed to Flanders, that an investigator stated that they had found child pornography images on Flanders's computer.  (State Court Record § D.4 at 16.)  Flanders knew he did not have child pornography on his computer, so there is no factual basis for his argument that on account of counsel's expression of concern or the statement by the investigator the pleas somehow became unknowing and involuntary.

The court also addressed Flanders's concern that as a gay man, he was subjected to bias and was not treated fairly.  (State Court Record § D.4 at 15-16.)  Flanders alleges as evidence of anti-gay bias that an unrelated assault against Flanders by a fellow inmate while Flanders was in jail went unprosecuted.  (Petitioner's Memorandum at 5; State Court Record § D.3, Vol. I at 55, Vol. II at 33-38.)  The court noted that there was no basis for any claim of anti-gay bias by counsel, who actively and successfully prioritized what counsel thought would be a safer incarceration experience for Flanders in the county jail rather than at a Department of Corrections facility.  (State Court Record § D.4 at 16.)  The court also found that Flanders failed to demonstrate that anti-gay bias rendered the plea unknowing and involuntary.  (State Court Record § D.4 at 16.)

Second, Flanders argues that counsel failed to adequately investigate the charge or evaluate the evidence.  However, Flanders did not allege what additional evidence counsel would have found to strengthen Flanders's defense.  (State Court Record § D.4 at 17.)  The court did not incorrectly or unreasonably apply federal law when it concluded that Flanders had not

demonstrated that the alleged failure of counsel deprived him of a substantial ground of defense or a favorable outcome.   (State Court Record § D.4 at 17.)  Flanders did not show that the assistance provided by counsel "'fell below an objective standard of reasonableness.'" See Moreno-Espada, 666 F.3d at 64; Tevlin, 621 F.3d at 66.

### CONCLUSION

I conclude, as indicated above with respect to each of the claims, that Flanders suffered no violation of his constitutional right to counsel or his right to enter a knowing and voluntary plea.  I therefore conclude that the post-conviction court's decision in conjunction with Flanders's state post-conviction petitions was neither contrary to nor an unreasonable application of federal law.  See 28 U.S.C. §2254(d)(1).  On that basis, I recommend that this Court deny Flanders relief under 28 U.S.C. § 2254, with prejudice, and dismiss his federal petitions.  I further recommend that certificates of appealability should not issue in the event Flanders files notices of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c).

**Notice**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated:  March 26, 2013